Jonathan Evans (Cal. Bar # 247376)
CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Telephone: (510) 844-7100 x318
Cellphone: (213) 598-1466
Email: jevans@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological Diversity and*
*Center for Environmental Health*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CENTER FOR BIOLOGICAL DIVERSITY and CENTER FOR ENVIRONMENTAL HEALTH<br><br>Plaintiffs,<br><br>vs.<br><br>MICHAEL S. REGAN, in his official capacity as Administrator of the United States Environmental Protection Agency,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>(Clean Air Act, 42 U.S.C. §§ 7401 *et seq*) |

**INTRODUCTION**

1.      This action is brought under the federal Clean Air Act, 42 U.S.C. §§ 7401–7671q, and seeks to compel the Administrator of the United States Environmental Protection Agency ("EPA") to carry out his outstanding legal obligations to promulgate Federal Implementation Plans ("FIP") to address requirements for the 2008 ozone National Ambient Air Quality Standards ("NAAQS") that apply to nonattainment areas in California and New Hampshire.

2.      Ozone air pollution has profound effects on human health. EPA found that ozone "posed multiple, serious threats to health" including: worsening respiratory and cardiovascular health, increased likelihood of early death, increased asthma-related hospital admissions, increased likelihood of children developing asthma as adolescents, and lower birthweights and decreased lung function in newborns.[1] Individuals particularly sensitive to ozone exposure include older adults, people with heart and lung disease, people who work and exercise outdoors, and children.[2]

3.      Ozone is also harmful to vegetation and ecosystems.[3] Ozone can be especially harmful to sensitive vegetation—including trees such as the black cherry, quaking aspen, white pine, and ponderosa pine—during the growing season.[4] Ozone pollution can also indirectly harm soils, water, wildlife, and their associated ecosystems, leading to diminished clean air and water.[5]

4.      Finally, ozone pollution also contributes to the climate crisis, as ozone is a greenhouse gas and ozone pollution also hinders plant growth throughout a plant's lifecycle, thereby shrinking the carbon sequestration potential of plants.[6]

5.      Accordingly, Plaintiffs CENTER FOR BIOLOGICAL DIVERSITY and

---

[1] American Lung Association, *Ozone*, https://www.lung.org/clean-air/outdoors/what-makes-air-unhealthy/ozone (last updated Apr. 20, 2020) (summarizing the results of Table 1-1 in EPA, *Integrated Science Assessment for Ozone and Related Photochemical Oxidants*, 1-5 (2013)), EPA/600/R-I0/076F.
[2] 78 Fed. Reg. 3086, 3088 (Jan. 15, 2013); *see* 73 Fed. Reg. 16436, 16440 (Mar. 27, 2008).
[3] EPA, *Ecosystem Effects of Ozone Pollution*, https://www.epa.gov/ground-level-ozone-pollution/ecosystem-effects-ozone-pollution (last updated Mar. 8, 2022).
[4] *Id.*, *see also* EPA, *Integrated Science Assessment for Ozone and Related Photochemical Oxidants*, 8-42 (Apr. 2020), EPA/600/R-20/012.
[5] 73 Fed. Reg. 16436, 16486 (Mar. 27, 2008).
[6] *Id.*; *see generally* University California Davis, *Biological Carbon Sequestration*, https://climatechange.ucdavis.edu/science/carbon-sequestration/biological/ (last updated Nov. 5, 2021).

1

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

CENTER FOR ENVIRONMENTAL HEALTH bring this action against Defendant MICHAEL S. REGAN, in his official capacity as Administrator for the United States EPA, to compel him to perform his mandatory duties to ensure health and public welfare protections promised under the Clean Air Act.

## JURISDICTION

6.     This case is a Clean Air Act "citizen suit." Therefore, the Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 42 U.S.C. § 7604(a) (Clean Air Act citizen suit).

7.     An actual controversy exists between the parties. This case does not concern federal taxes, is not a proceeding under 11 U.S.C. § 505 or 11 U.S.C. § 1146, and the case does not involve the Tariff Act of 1930.

8.     Thus, this Court has jurisdiction to order declaratory relief under 28 U.S.C. § 2201. If the Court orders declaratory relief, 28 U.S.C. § 2202 authorizes this Court to issue injunctive relief.

## NOTICE

9.     Plaintiffs gave EPA written notice of intent to sue regarding the claims alleged in this Complaint on February 10, 2021, by certified mail.

10.     More than sixty days have passed since Plaintiffs mailed the notice letter discussed above. EPA has not remedied the violations alleged in this Complaint. Therefore, a present and actual controversy exists between the parties.

## VENUE

11.     Defendant EPA resides in this judicial district. This civil action is brought against an officer of the United States acting in his official capacity. Some of the claims in this Complaint concern EPA's failure to perform mandatory duties regarding California. EPA Region 9, which is responsible for California, is headquartered in San Francisco. Thus, events and omissions at issue in this action occurred at EPA's Region 9 headquarters in San Francisco. Additionally, Plaintiff CENTER FOR ENVIRONMENTAL HEALTH resides in Oakland.

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

1    Accordingly, venue is proper in this Court pursuant to 28 U.S.C. § 1391(e).

2                              **INTRADISTRICT ASSIGNMENT**

3        12.    A substantial part of the events and omissions giving rise to the claims in this case

4    occurred in the County of San Francisco. Accordingly, assignment to the Oakland or San

5    Francisco Division is proper pursuant to Civil L.R. 3-2(c) and (d).

6                                        **PARTIES**

7        13.    Plaintiff CENTER FOR BIOLOGICAL DIVERSITY is a non-profit 501(c)(3)

8    corporation incorporated in California. The Center for Biological Diversity's mission is to ensure

9    the preservation, protection, and restoration of biodiversity, native species, ecosystems, public

10   lands and waters, and public health through science, policy, and environmental law. Based on the

11   understanding that the health and vigor of human societies and the integrity and wildness of the

12   natural environmental are closely linked, the Center for Biological Diversity is working to secure

13   a future for animals and plants hovering on the brink of extinction, to protect the ecosystems they

14   need to survive, and for a healthy, livable future for all of us.

15       14.    Plaintiff the CENTER FOR ENVIRONMENTAL HEALTH is an Oakland,

16   California based non-profit organization that helps protect the public from toxic chemicals and

17   promotes business products and practices that are safe for public health and the environment.

18   The Center for Environmental Health works in pursuit of a world in which all people live, work,

19   learn, and play in healthy environments.

20       15.    Plaintiffs' members live, work, recreate, travel, and engage in activities

21   throughout the areas at issue in this Complaint and will continue to do so on a regular basis.

22   Pollution in the affected areas threatens and damages, and will continue to threaten and damage,

23   the health and welfare of Plaintiffs' members. Pollution diminishes Plaintiffs' members' ability

24   to enjoy the aesthetic qualities and recreational opportunities of the affected areas.

25       16.    Plaintiffs have a member whose work focuses on California deserts including the

26   Mojave Desert. This member is adversely affected by EPA's failure to issue a FIP for the Los

27   Angeles—San Bernardino Counties (West Mojave Desert), California area.

28

                                            3

                          COMPLAINT FOR DECLARATORY AND
                          INJUNCTIVE RELIEF

17.     Plaintiffs have a member who has lived in Sacramento since the 1990's and will continue to do so. This member currently lives in the Sacramento Metro (Sacramento) area and he lived in the Sacramento (Yolo-Solano) area for five years. He currently bicycle rides through the greater Sacramento region including the Yolo County area every weekend. Additionally, this member rides his bicycle through Solano County once a year, and the next bicycle trip through Solano County is scheduled for October 1st, 2022. This member is adversely affected by EPA's failure to issue a FIP for Sacramento Metro (Sacramento) and Sacramento (Yolo-Solano), California areas.

18.     Plaintiffs have a member who owns a condominium in New Hampshire and spends a significant portion of the year in the state and will continue to do so. He enjoys outdoor activities including hiking in New Hampshire. He is elderly and thus sensitive to ozone. This member is adversely affected by EPA's failure to issue a FIP for the New Hampshire area.

19.     EPA's failure to timely perform the mandatory duties described herein also adversely affects Plaintiffs, as well as their members, by depriving them of procedural protection and opportunities, as well as information that they are entitled to under the Clean Air Act. Furthermore, EPA's failure to perform its mandatory duties also creates uncertainty for Plaintiffs' members as to whether they are exposed to excess air pollution.

20.     Defendant MICHAEL S. REGAN is sued in his official capacity as the Administrator of the United States EPA. In that role, EPA has been charged by Congress with the duty to administer the Clean Air Act, including the mandatory duties at issue in this case.

21.     The above injuries will continue until the Court grants the relief requested herein.

## STATUTORY FRAMEWORK

22.     Congress enacted the Clean Air Act to "speed up, expand, and intensify the war against air pollution in the United States with a view to assuring the air we breathe through the Nation is wholesome once again." H.R. Rep. No. 1146, 91st Cong., 2d Sess. 1, 1 (1970).

23.     Commensurate with this goal, Congress authorized the Administrator of the United States EPA to establish NAAQS for "criteria pollutants," which are air pollutants that

4

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

"cause or contribute to air pollution which may reasonably be anticipated to endanger public health or welfare." 42 U.S.C. § 7408(a)(1)(A).

24.     There are primary and secondary NAAQS. *Id.* § 7409(a)(1)(A). Primary NAAQS provide for "an adequate margin of safety…to protect the public health," while secondary NAAQS "protect the public welfare from any known or anticipated adverse effects associated with the presence of such air pollutants in the ambient air." *Id.* U.S.C. § 7409(b)(1)-(2).

25.     After promulgating a new or revised NAAQS, the Administrator determines whether geographic areas are designated nonattainment (areas that do not meet the primary or secondary NAAQS), attainment (areas that meet the primary or secondary NAAQS), or unclassifiable (areas that cannot be classified based on available information). 42 U.S.C. § 7407(d)(1)(A).

26.     States are required to submit State Implementation Plans ("SIPs") and plan revisions that "provides for the implementation, maintenance, and enforcement" of any NAAQS. 42 U.S.C. § 7410(a)(1).

27.     Within six months of a state submitting a SIP, the Administrator must make a completeness finding. However, if the Administrator does not make a completeness finding within six months of submittal, the plan submission is deemed administratively complete by operation of law. *Id.* § 7410(k)(1)(B).

28.     EPA is required to take final action to approve, disapprove, or provide a conditional approval or disapproval within twelve months of a completeness finding for a SIP. *Id.* § 7410(k)(2)-(3).

29.     Within two years of EPA finding that a state failed to submit a required SIP or disapproval of a SIP submittal, EPA must promulgate a FIP. *Id.* § 7410(c).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

# FACTUAL BACKGROUND

A. **EPA Violated the Clean Air Act by Failing to Promulgate a FIP for 2008 Ozone NAAQS Nonattainment Areas in California and New Hampshire**

30.     On February 3, 2017, EPA published a final rule which found that fifteen states and the District of Columbia failed to submit SIP "revisions in a timely manner to satisfy certain requirements for the 2008 ozone NAAQS that apply to nonattainment areas..." 82 Fed. Reg. 9158, 9158 (Feb. 3, 2017). Further, EPA found, "[t]hese findings of failure to submit establish certain deadlines...for the EPA to promulgate a...FIP to address any outstanding SIP requirements." *Id.*

31.     EPA's finding became effective on March 6, 2017; therefore, no later than March 6, 2019, was the deadline for EPA to fulfill its mandatory duty to promulgate FIPs. *Id.* More than two years have passed, and EPA has not promulgated FIPs for the nonattainment areas in Los Angeles-San Bernardino Counties (West Mojave Desert), California; Sacramento Metro (Sacramento), California; Sacramento Metro (Yolo-Solano), California; and New Hampshire.

32.     Therefore, EPA is in violation of its mandatory duties by not promulgating FIPs.

33.     Table 1 lists 2008 ozone NAAQS nonattainment SIP elements which EPA has failed to promulgate FIPs for by the Clean Air Act's statutory deadline.

**TABLE 1: THE 2008 OZONE NAAQS NONATTAINMENT SIP ELEMENTS FOR NONATTAINMENT AREAS WHICH EPA FAILED TO PROMULGATE FIPS FOR BY DEADLINE**

|  | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| A. | Los Angeles—San Bernardino Counties (West Mojave Desert), California | • Nonattainment New Source Review ("NSR") for Severe 15 | • 3/6/2019[7] |
| B. | Sacramento Metro (Sacramento), California | • Reasonable available control technology ("RACT") Non- | • 3/6/2019[8] |

---

[7] *See* 82 Fed. Reg. 9158, 9161 (Feb. 3, 2017).
[8] *Id.*

6

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| | | Control Techniques ("CTG") Volatile Organic Compounds ("VOC") for Major Sources<br>• RACT NOx for Major Sources<br>• RACT VOC CTG Aerospace<br>• RACT VOC CTG Auto and Light-Duty Truck Assembly Coatings (2008)<br>• RACT VOC CTG Bulk Gasoline Plants<br>• RACT VOC CTG Equipment Leaks from Natural Gas/Gasoline Processing Plants<br>• RACT VOC CTG Factory Surface Coating of Flat Wood Paneling<br>• RACT VOC CTG Fiberglass Boat Manufacturing Materials (2008)<br>• RACT VOC CTG Flat Wood Paneling Coatings (2006)<br>• RACT VOC CTG Flexible Packaging Printing Materials (2006)<br>• RACT VOC CTG Fugitive Emissions from Synthetic Organic Chemical Polymer and Resin Manufacturing Equipment<br>• RACT VOC CTG Graphic Arts - Rotogravure and Flexography<br>• RACT VOC CTG Industrial Cleaning Solvents (2006)<br>• RACT VOC CTG Large Appliance Coatings (2007)<br>• RACT VOC CTG Large Petroleum Dry Cleaners<br>• RACT VOC CTG Leaks from Gasoline Tank Trucks and Vapor Collection Systems<br>• RACT VOC CTG Leaks from Petroleum Refinery Equipment<br>• RACT VOC CTG Lithographic Printing Materials and Letterpress | |

7

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

| | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| | | Printing Materials (2006)<br>• RACT VOC CTG Manufacture of High-Density Polyethylene, Polypropylene, and Polystyrene Resins<br>• RACT VOC CTG Manufacture of Pneumatic Rubber Tires<br>• RACT VOC CTG Manufacture of Synthesized Pharmaceutical Products<br>• RACT VOC CTG Metal Furniture Coatings (2007)<br>• RACT VOC CTG Miscellaneous Industrial Adhesives (2008)<br>• RACT VOC CTG Miscellaneous Metal Products Coatings (2008)<br>• RACT VOC CTG Paper, Film, and Foil Coatings (2007)<br>• RACT VOC CTG Petroleum Liquid Storage in External Floating Roof Tanks<br>• RACT VOC CTG Refinery Vacuum Producing Systems, Wastewater Separators, and Process Unit Turnarounds<br>• RACT VOC CTG Synthetic Organic Chemical Manufacturing Industry ("SOCMI") Air Oxidation Processes<br>• RACT VOC CTG SOCMI Distillation and Reactor Processes<br>• RACT VOC CTG Shipbuilding/repair<br>• RACT VOC CTG Solvent Metal Cleaning<br>• RACT VOC CTG Stage I Vapor Control Systems—Gasoline Service Stations<br>• RACT VOC CTG Storage of Petroleum Liquids in Fixed Roof Tanks<br>• RACT VOC CTG Surface Coating for Insulation of Magnet | |

8

| | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| | | Wire<br>• RACT VOC CTG Surface Coating of Automobiles and Light-Duty Trucks<br>• RACT VOC CTG Surface Coating of Cans<br>• RACT VOC CTG Surface Coating of Coils<br>• RACT VOC CTG Surface Coating of Fabrics<br>• RACT VOC CTG Surface Coating of Large Appliances<br>• RACT VOC CTG Surface Coating of Metal Furniture<br>• RACT VOC CTG Surface Coating of Miscellaneous Metal Parts and Products<br>• RACT VOC CTG Surface Coating of Paper<br>• RACT VOC CTG Tank Truck Gasoline Loading Terminals<br>• RACT VOC CTG Use of Cutback Asphalt<br>• RACT VOC CTG Wood Furniture | |
| C. | Sacramento Metro (Yolo-Solano), California | • RACT VOC CTG Bulk Gasoline Plants<br>• RACT VOC CTG Fiberglass Boat Manufacturing Materials (2008)<br>• RACT VOC CTG Industrial Cleaning Solvents (2006)<br>• RACT VOC CTG Leaks from Gasoline Tank Trucks and Vapor Collection Systems<br>• RACT VOC CTG Miscellaneous Metal Products Coatings (2008)<br>• RACT VOC CTG Petroleum Liquid Storage in External | • 3/6/2019[9] |

---

[9] See 82 Fed. Reg. 9158, 9161 (Feb. 3, 2017).

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| | | Floating Roof Tanks<br>• RACT VOC CTG Solvent Metal Cleaning<br>• RACT VOC CTG Stage I Vapor Control Systems—Gasoline Service Stations<br>• RACT VOC CTG Surface Coating of Miscellaneous Metal Parts and Products<br>• RACT VOC CTG Tank Truck Gasoline Loading Terminals<br>• RACT VOC CTG Use of Cutback Asphalt<br>• RACT Non-CTG VOC for Major Sources<br>• RACT NOx for Major Sources | |
| D. | New Hampshire | • Non-CTG VOC RACT for Major Sources<br>• RACT NOx for Major Sources<br>• RACT VOC CTG Aerospace<br>• RACT VOC CTG Auto and Light-Duty Truck Assembly Coatings (2008)<br>• RACT VOC CTG Bulk Gasoline Plants<br>• RACT VOC CTG Equipment Leaks from Natural Gas/Gasoline Processing Plants<br>• RACT VOC CTG Factory Surface Coating of Flat Wood Paneling<br>• RACT VOC CTG Fiberglass Boat Manufacturing Materials (2008)<br>• RACT VOC CTG Flat Wood Paneling Coatings (2006)<br>• RACT VOC CTG Flexible Packaging Printing Materials (2006) | • 3/6/2019[10] |

[10] *See* 82 Fed. Reg. 9158, 9162 (Feb. 3, 2017).

10

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| | | • RACT VOC CTG Fugitive Emissions from Synthetic Organic Chemical Polymer and<br>• Resin Manufacturing Equipment<br>• RACT VOC CTG Graphic Arts—Rotogravure and Flexography<br>• RACT VOC CTG Industrial Cleaning Solvents (2006)<br>• RACT VOC CTG Large Appliance Coatings (2007)<br>• RACT VOC CTG Large Petroleum Dry Cleaners<br>• RACT VOC CTG Leaks from Gasoline Tank Trucks and Vapor Collection Systems<br>• RACT VOC CTG Leaks from Petroleum Refinery Equipment<br>• RACT VOC CTG Manufacture of High-Density Polyethylene, Polypropylene, and Polystyrene Resins<br>• RACT VOC CTG Manufacture of Pneumatic Rubber Tires<br>• RACT VOC CTG Manufacture of Synthesized Pharmaceutical Products<br>• RACT VOC CTG Metal Furniture Coatings (2007)<br>• RACT VOC CTG Miscellaneous Industrial Adhesives (2008)<br>• RACT VOC CTG Miscellaneous Metal Products Coatings (2008)<br>• RACT VOC CTG Paper, Film, and Foil Coatings (2007)<br>• RACT VOC CTG Petroleum Liquid Storage in External Floating Roof Tanks<br>• RACT VOC CTG Plastic Parts Coatings (2008)<br>• RACT VOC CTG Refinery Vacuum Producing Systems, Wastewater Separators, and Process Unit Turnarounds | |

11

COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

| | Area, State | SIP Elements | Deadline for EPA to Promulgate FIP |
|---|---|---|---|
| | | • RACT VOC CTG SOCMI Air Oxidation Processes<br>• RACT VOC CTG SOCMI Distillation and Reactor Processes<br>• RACT VOC CTG Shipbuilding/repair<br>• RACT VOC CTG Solvent Metal Cleaning<br>• RACT VOC CTG Stage I Vapor Control Systems—Gasoline Service Stations<br>• RACT VOC CTG Storage of Petroleum Liquids in Fixed Roof Tanks<br>• RACT VOC CTG Surface Coating for Insulation of Magnet Wire<br>• RACT VOC CTG Surface Coating of Automobiles and Light-Duty Trucks<br>• RACT VOC CTG Surface Coating of Cans<br>• RACT VOC CTG Surface Coating of Coils<br>• RACT VOC CTG Surface Coating of Fabrics<br>• RACT VOC CTG Surface Coating of Large Appliances<br>• RACT VOC CTG Surface Coating of Metal Furniture<br>• RACT VOC CTG Surface Coating of Miscellaneous Metal Parts and Product<br>• RACT VOC CTG Surface Coating of Paper<br>• RACT VOC CTG Tank Truck Gasoline Loading Terminals<br>• RACT VOC CTG Use of Cutback Asphalt<br>• RACT VOC CTG Wood Furniture | |

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

**CLAIM FOR RELIEF**

**(Failure to promulgate a FIP to address requirements for the 2008 ozone NAAQS that apply to nonattainment areas in California and New Hampshire)**

34.     Plaintiffs incorporate by reference all paragraphs listed above.

35.     It has been more than two years since the effective date of EPA's final rule which found that the states in Table 1 failed to submit SIP element "revisions in a timely manner to satisfy certain requirements for the 2008 ozone NAAQS that apply to nonattainment areas..." 82 Fed. Reg. 9158, 9158 (Feb. 3, 2017). Further, it has been more than two years since EPA found, "[t]hese findings of failure to submit establish certain deadlines...for the EPA to promulgate a...FIP to address any outstanding SIP requirements." *Id.*

36.     EPA has not promulgated a FIP to address the SIP elements for the 2008 ozone NAAQS in nonattainment areas in Los Angeles—San Bernardino Counties (West Mojave Desert), California; Sacramento Metro (Sacramento), California; Sacramento Metro (Yolo-Solano), California; and New Hampshire listed in Table 1.  Nor have the States corrected the deficiencies of failure to submit the SIP elements listed in Table 1 and EPA approved the SIP elements submitted to correct the deficiencies of failure to submit the SIP elements listed in Table 1.

37.     Accordingly, EPA is in violation of its mandatory duty under 42 U.S.C. § 7410(c)(1) to promulgate a FIP for the SIP elements listed in Table 1.

**REQUEST FOR RELIEF**

Wherefore, Plaintiffs respectfully request that the Court:

38.     Declare that EPA is in violation of the Clean Air Act with regard to its nondiscretionary duty to perform each mandatory duty listed above;

39.     Issue a mandatory injunction requiring EPA to perform its mandatory duties by certain dates;

40.     Retain jurisdiction of this matter for purposes of enforcing the Court's order;

41.     Grant Plaintiffs their reasonable costs of litigation, including attorneys' and expert

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF

fees; and

42.     Grant such other relief as the Court deems just and proper.

Dated: June 7, 2022

Respectfully submitted,

*/s/ Jonathan Evans*
Jonathan Evans (Cal. Bar # 247376)

CENTER FOR BIOLOGICAL DIVERSITY
1212 Broadway, Suite 800
Oakland, CA 94612
Telephone: (510) 844-7100 x318
Cellphone: (213) 598-1466
Email: jevans@biologicaldiversity.org

*Attorney for Plaintiffs Center for Biological*
*Diversity and Center for Environmental Health*

14

COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF